## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**BANK OF AMERICA, N.A., a National**
**Banking Association,**

              Plaintiff,

     vs.                            No. 1:07-cv-0381 MCA/LAM

**PORTALES LIVESTOCK AUCTION,**
**INC., A New Mexico Corporation, et**
**al.,**

              Defendants.


## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Plaintiff *Bank of America's Motion for Summary Judgment on Counts I & III of its Complaint* [Doc. 50] and memorandum in support thereof [Doc. 51], filed December 20, 2007.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court concludes that the Motion should be **GRANTED in part and DENIED in part.**

## I.     BACKGROUND

      This is an action by Plaintiff Bank of America ("Bank") on eight bounced checks totaling approximately $4 million.  Although the pleadings describe a complex factual scenario, only the few facts that are material to the issues presented on this motion are set forth below.

Calvin and Darcie Pareo, doing business as Milk Flow Dairy, held an account at Bank. [Doc. 51-2 at 3.]  Over a period of a few days in August 2005, the eight checks that are the subject of this lawsuit were deposited into the account.  Defendant Portales Livestock Auction, Inc. ("PLA") is the drawer of the checks, which were all drawn on PLA's account at Portales National Bank.  [Doc. 51-2 at 7–12.]  The payee on each check is "Milk Flow Dairy" or "Milk Flow."  [Id.]

Bank credited the account in the amount of $4,002,765, the combined total of the eight checks.  [Doc. 51-2 at 4.]  Shortly thereafter, approximately $11 million was wired out of the account into another account held by Pareo/Milk Flow Dairy at Portales National Bank.  [Id.]

The eight checks subsequently were returned for insufficient funds and have never been paid.  [Doc. 51-2 at 4.]  Calvin and Darcie Pareo filed for bankruptcy in November 2005 and, with the approval of the bankruptcy court, assigned to Bank any claims against PLA arising out of the checks.[1]  [Id. 15–18.]

Bank alleges nine causes of action against PLA.  On this motion, Bank seeks summary judgment on two of the claims: (1) Count I, a claim to enforce the instruments under the Uniform Commercial Code ("UCC"), NMSA 1978 § 55-3-301; and (2) Count III, breach of

---

[1]Although not relevant to the issues presented, it is worth noting that according to Bank, Calvin Pareo and PLA used their cattle buying and selling operation as cover for a complicated check kiting scheme that eventually caught up with them when the checks at issue were dishonored.  [Doc. 24.]  PLA, on the other hand, claims that it is not responsible for the dishonored checks because the failure to pay was the result of "unilateral" action by Portales National Bank and Plaintiff Bank's own misfeasance and lack of diligence in failing to monitor the Pareo/Milk Flow Diary account.  [Doc. 12 at 3.]

contract.

PLA has responded alleging that the Bank's motion is premature.  Pursuant to Rule 56(f), PLA claims that additional time is needed to conduct discovery before it can properly respond to the motion.

## II.   LEGAL STANDARDS

### A.   Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure permits a party seeking to recover upon a claim to move for summary judgment in the party's favor.  Fed.R.Civ.P. 56(a). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Where, as here, the movant is also the party bearing the burden of persuasion at trial, it must show that the record as a whole satisfies each essential element of the  claim in such a way that no rational trier of fact could find for the non-moving party.  *See 19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir.1998).  In ruling on a motion for summary judgment, the Court does not weigh the evidence and determine the truth of the matter, but simply determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249.

B.        **Rule 56(f) Standards**

In response to Bank's *Motion for Summary Judgment on Counts I & III of its Complaint*, PLA asserts that additional discovery is needed and asks the Court to deny the Bank's motion on this ground.

Rule 56 (f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

The party invoking Rule 56(f) bears the burden must show <u>how</u> additional time will enable it to rebut the movant's allegations. *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993). Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Jensen*, 998 F.2d at 1554 (citation and quotation marks omitted). It also is insufficient to allege that evidence is in the hands of the opposing party. *Jensen*, 998 F.2d at 1554.

III.    **ANALYSIS**

The Court first addresses PLA's Rule 56(f) arguments.

PLA claims it is "unable to make a proper showing of the essential facts necessary to oppose" the Bank's motion unless it is afforded additional time to conduct discovery as well as time to review documents it expects will be produced in response to various subpoenas

4

issued by the Bank.  [Doc. 56 at 3.]  PLA further contends that, once received and reviewed, the documents may reveal that additional depositions are necessary.  [Id. at 2.]  According to PLA, the facts asserted in the Bank's motion are subject to dispute "until all the circumstances surrounding the numerous transactions by and between the parties are fully and completely discovered."  [Id. at 3.]

In support of its Rule 56(f) request, PLA submitted the affidavit of its counsel Wesley O. Pool [Doc. 56-2], attached as Exhibit A to its *Memorandum of Points and Authorities in Opposition to Plaintiff's Partial Motion for Summary Judgment.*  In reviewing said Exhibit A, it became obvious to the Court that only the first page of what was stated to be a three-page affidavit was in fact filed.  On April 23, 2008, the Court entered an Order directing PLA to resubmit for filing all pages of said affidavit.  [Doc. 62.]  On April 25, 2008, Mr. Pool, counsel for PLA, re-submitted the *Affidavit of Wesley O. Pool in Support of Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* [Doc. 63.]

Upon comparing the re-submitted affidavit [Doc. 63] with the first-submitted affidavit [Doc. 56-2], it became obvious to the Court that the two documents are not identical.  The first pages contain different wording.  In addition, the first affidavit notes at the bottom of the first page the words "*Page 1 of 3*" suggesting that it is a three-page affidavit [Doc. 56-2 at 2], whereas the re-submitted affidavit notes at the bottom of the first page the words "*Page 1 of 2*" and is clearly a two-page document.  [Doc. 63.]

This Court has the authority to strike Document 63 for the reason that it does not comply with the Court's Order and appears to have been altered from the original affidavit

filed with this Court.  These circumstances call into question the reliability of the statements contained in the affidavit.

The Bank's reply [Doc. 59] references paragraphs 3, 4, and 5 of Exhibit A.  However, while these particular paragraphs were not included in the version of Exhibit A filed with the Court, the references appear to correspond to paragraphs 3, 4, and 5 of the re-submitted affidavit.  [Doc. 63.]  Despite PLA's violation of this Court's Order, and the obvious submission of an altered form of affidavit, this Court will exercise its discretion, in the absence of any objection from the Plaintiff, to consider the substance of the re-submitted affidavit for purposes of assessing PLA's Rule 56(f) request.

PLA's Rule 56(f) request must be denied for several reasons.  First, the affidavit merely states in the most conclusory of terms that additional discovery is necessary.  Such general assertions are not sufficient to meet PLA's Rule 56(f) burden.  PLA has failed to identify any facts that it believes will be discovered in the documents that it is awaiting. Furthermore, it has not attempted to show how such facts, if discovered, would be useful in opposing summary judgment.

Second, PLA failed to specify the amount of time it needed to conduct adequate discovery.  However, since making its Rule 56(f) request on January 14, 2008, PLA has neither supplemented the record nor sought leave of Court to submit evidence to oppose the Bank's motion.  The documents that PLA claimed it was awaiting were subpoenaed by the Bank in December 2007.  Furthermore, discovery in this matter closed on February 15, 2008,

after having been extended from December 17, 2007 at the parties' request.[2]  With both

discovery and the dispositive motion deadline now passed by several months, and trial set

for June 2008, the Court concludes that PLA has had sufficient time to conduct discovery.

Third, the information that PLA speculates it may obtain through additional discovery

is largely irrelevant to the issues presented on this motion.  PLA contends that the Bank's

claim that it is a holder in due course "could be without a factual basis."  [Doc. 56 at 3.]

However, the issue of holder in due course status does not arise until the last of the three

steps in the burden-shifting analysis that is applicable to this case.  As explained in more

detail below, it is unnecessary for the Court to reach the final step.  Thus, evidence pertaining

to whether the Bank is a holder in due course would not assist PLA in opposing summary

judgment.

For the foregoing reasons, this Court will not delay its ruling on the Bank's Motion,

nor will it deny the Motion on the grounds that PLA has had inadequate time to conduct

discovery.

**A.     Count I - UCC Claim**

**1.     Burden-shifting framework**

The checks at issue here are negotiable instruments subject to Article 3 of the UCC.

NMSA 1978, § 55-3-104(a), (f).  The UCC sets forth a burden-shifting framework for actions

on negotiable instruments.

--------------------------------------------------

[2] See Order of Judge Martinez granting parties' stipulation to extend discovery.  [Doc. 41]

A plaintiff who is a "holder" establishes a prima facie case if it produces the instrument and shows that the signatures on it are valid. NMSA 1978, § 55-3-308(b); § 55-3-301. The burden then shifts to the defendant to prove a defense or claim in recoupment. NMSA 1978, § 55-3-308(b). Unless the defendant does so, the plaintiff is entitled to payment on the instrument. If a defense or claim in recoupment is proved, the burden then shifts back to the plaintiff to prove that it "has the rights of a holder in due course which are not subject to the defense or claim." NMSA 1978, § 55-3-308(b).

### 2.      Prima facie case

The Bank argues it may enforce the instruments because it is a holder in due course.[3] [Doc. 51 at 3–6.] However, the Bank does not necessarily have to establish that it is a holder in due course in order to recover. The Bank meets its initial burden simply by showing (1) it is a holder and (2) the signatures are genuine.

Each of the checks is payable to the order of "Milk Flow Dairy" or "Milk Flow." [Doc. 51-2 at 7–12.] They are therefore "order paper" which is negotiated by indorsement and transfer of possession. NMSA 1978, § 55-3-109(b). The Bank thus became the holder of the checks when they were indorsed by Milk Flow Dairy and transferred to the Bank for deposit into the Pareo/Milk Flow account.

The burden also has been met with respect to the signatures. The only signatures on

---

[3]"Holder in due course" means the "holder" of the instrument if the instrument did not bear apparent evidence of forgery or alteration when negotiated, and the holder took the instrument (i) for value, (ii) in good faith, and (iii) without notice of certain claims and defenses. NMSA 1978, § 55-3-302(a).

the checks appear to be those of Defendant Randy Bouldin as drawer, and the indorsement of the payee, Milk Flow Dairy.  Although the burden is on the Bank, the signatures are "presumed to be authentic and authorized."[4]  NMSA 1978, § 55-3-308(a).  "Presumed" means "that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid." NMSA 1978, § 55-3-308 cmt. 1.  Thus, the burden of establishing the signature arises only when it has been put in issue by the defendant.  Id.  PLA has not alleged that any of the signatures are inauthentic, much less offered evidence that would support a finding that they are forged or unauthorized.  Accordingly, the presumption of validity applies here.

The Bank has thus established its prima facie case.  It is entitled to payment upon producing the instruments unless PLA establishes a defense or claim in recoupment.  NMSA 1978, § 55-3-308 cmt. 2 ("If a plaintiff producing the instrument proves entitlement to enforce the instrument...the plaintiff is entitled to recovery unless the defendant proves a defense or claim in recoupment.")

### 3.      PLA's burden to establish defenses

In its Answer, PLA asserted the defenses of estoppel, payment, waiver, accord and satisfaction, failure to state a claim upon which relief can be granted, fraud, laches, and unclean hands.  [Doc. 9 at 7.]  However, it has not asserted these defenses—or any others— in its memorandum in opposition to the Bank's motion.  [Doc. 56.]  Accordingly, PLA has

---

[4]The presumption does not apply in cases where the purported signer is dead or incompetent, neither of which has been alleged here.  NMSA 1978, § 55-3-308(a).

failed to meet its burden, and the prima facie case stands.

Because PLA has failed to carry its burden, the Court need not consider whether the Banks is a holder in due course. "Until proof of a defense or claim in recoupment is made, the issue as to whether the plaintiff has rights of a holder in due course does not arise." NMSA 1978, § 55-3-308 cmt. 2.

### B.   Count III - Breach of Contract

The  Bank's breach of contract claim is based on rights the Bank claims it acquired by assignment from Calvin and Darcie Pareo.  The operative language in the Assignment of Claims states:

> Calvin Pareo and Darcie Pareo, for good and valuable consideration assign all of their rights, title, and interest in all claims they have or may have against Portales Livestock Auction, Inc. and Randy Bouldin arising out of checks made payable to the Pareos or Milk Flow Dairy made by and drawn on an account of Portales Livestock Auction, Inc., a New Mexico corporation which were signed by Randy Bouldin and which were returned by the drawee after being presented for payment.

[Doc. 51-2 at 15.]  Thus, the Pareos assigned to the Bank only those claims "arising out of the checks."

According to the Bank, the checks "constitute an unconditional promise to pay Milk Flow Dairy the total sum certain of $4,002,765."  [Doc. 1, ¶ 40.]  The Bank argues that the checks were never paid and PLA therefore still owes the face amount of the checks to Milk Flow.  [Doc. 51 at 5.]  The Bank's breach of contract claim is thus based on the checks themselves, not on any purported contract or transaction underlying the checks.

Prior to making the assignment, Milk Flow Dairy had negotiated the checks to the Bank for value in the form of a credit to its account.  [Doc. 51-2 at 3–4.]  Upon negotiating the checks, Milk Flow Dairy was no longer the holder, and therefore no longer entitled to enforce them.  Accordingly, Milk Flow Dairy had no rights in the checks themselves that it could assign.  "It is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor."  *Inv. Co. of the SW v. Reese*, 875 P.2d 1086, 1092 (N.M. 1994) (citations and quotation marks omitted).   Furthermore, the rights of the assignee are determined at the time of the assignment.  *Nickell v. U.S. ex rel. D.W. Falls, Inc*., 355 F.2d 73, 76 (10th Cir. 1966).  In sum, the Bank's breach of contract claim fails because Milk Flow Dairy no longer had any rights on the checks at the time the assignment was made.

## IV.    CONCLUSION

The Court concludes that PLA has failed to meet its burden under Rule 56(f).  The Court further concludes that Bank of America's motion is well-taken with respect to Count I and is not well-taken with respect to Count III.

**IT IS, THEREFORE, ORDERED** that Defendant Portales Livestock Auctions, Inc.'s request to deny Plaintiff *Bank of America's Motion for Summary Judgment on Counts I & III of its Complaint* [Doc. 50] on the grounds that the motion is "premature" is **DENIED**.

**IT IS, FURTHER, ORDERED** that Plaintiff *Bank of America's Motion for Summary Judgment on Counts I & III of its Complaint* [Doc. 50] is **GRANTED in part and DENIED**

11

**in part.**  The Motion is **GRANTED** as to Count I and **DENIED** as to Count III.

**SO ORDERED** this 7th day of May 2008**,** in Albuquerque New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

12